IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHAN JUDKINS, #B00481, )<br>)<br>               **Plaintiff,**  )<br>vs.                              )<br>)<br>W. SPILLER, C/O WALKER,  )<br>SGT. HART, LT. BROOKMAN,  )<br>LT. SCHOENBEDK, KELLY PIERCE, )<br>J. LASHBROOK, and  )<br>F. LAWRENCE,  )<br>)<br>              **Defendants.**  ) | Case No. 21-288-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Plaintiff Jonathan Judkins, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Hill Correctional Center ("Hill"), brings this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights that occurred in 2018 while he was confined at Menard Correctional Center ("Menard"). He asserts that due process procedures were not followed in disciplinary proceedings against him and that he was falsely accused of a conduct violation. (Doc. 1). Plaintiff seeks declaratory and injunctive relief as well as monetary damages. (Doc. 1, pp. 1, 10-11).

This Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff makes the following allegations in his Complaint (Doc. 1): On May 11, 2018, Defendant Lt. Spiller placed Plaintiff under investigative status for 30 days. (Doc. 1, p. 3). Plaintiff wrote a grievance because the investigative report did not give him enough information to prepare a defense. On May 16, 2018, Spiller interviewed Plaintiff regarding another inmate; Plaintiff said he had no information on the person because they were on different galleries and did not go to yard together. Plaintiff told Spiller to talk to Ms. Wilson in mental health because in April 2018, Plaintiff had informed her that he would be renouncing his affiliation with security threat groups. Ms. Wilson had asked Plaintiff to wait to do this until she looked into it, but Plaintiff was put under investigation before Ms. Wilson got back to him. (Doc. 1, pp. 4-5).

On June 9, 2018, Plaintiff was given a disciplinary report; he signed it and requested Ms. Wilson to be called as a witness. Plaintiff sent grievances to the Administrative Review Board ("ARB") on June 10 and 11, 2018 regarding his placement on investigative status. (Doc. 1, p. 6).

On June 19, 2018, Plaintiff was taken before the Adjustment Committee chaired by Defendant Brookman. Plaintiff informed Brookman that he had sent a written statement, had requested Ms. Wilson as a witness, and had requested a recording of a phone call between two other inmates to be played. (Doc. 1, p. 4). Plaintiff also asked Brookman to call two officers from E-house (where Plaintiff had been housed before he was taken to segregation) to testify on the issue of whether Plaintiff's gallery ever went to yard with the inmates on the other gallery who were on the phone call.[1] *Id.* Adjustment Committee member Defendant Hart asked Plaintiff if he meant that he was nowhere around the men on the phone, which Plaintiff affirmed. (Doc. 1, p. 5).

Defendant Brookman continued the hearing so he could get Plaintiff's statement. (Doc. 1,

---

[1] Plaintiff indicates that the two inmates whose phone call was recorded were issued a disciplinary report as a result. (Doc. 1, p. 4).

p. 5). However, Defendants Brookman, Hart, and Walker never called Plaintiff back to resume the hearing, call his witness, or present his defense. Plaintiff asserts the disciplinary report was fabricated by Defendant Spiller and contained no information on the place, time, date, or other people involved in the alleged offense that would enable Plaintiff to prepare a defense. (Doc. 1, p. 5).

On August 10, 2018, Plaintiff filed an emergency grievance to Defendant Warden Lashbrook over the Adjustment Committee's action on June 19, 2018. (Doc. 1, p. 6). He filed another grievance on August 11, 2018, asserting the Adjustment Committee denied him due process because of the insufficient notice of the offense, failure to reconvene the hearing, and failure to consider the exculpatory evidence of the recorded phone call and his witnesses. (Doc. 1, pp. 6-7). The Committee further failed to provide Plaintiff with a written statement of the evidence relied on to find him guilty of the violation. (Doc. 1, pp. 7-8). He claims their decision was based solely on uncorroborated statements by informants who may or may not be real. (Doc. 1, p. 8).

On March 28, 2019, Plaintiff received a new Adjustment Committee summary after the ARB remanded the matter in response to Plaintiff's grievance No. 353-8-18. (Doc. 1, pp. 9, 12).[2] The new Adjustment Committee consisted of Defendants Schoenbedk and Hart. Plaintiff filed two more grievances over the revised summary because it relied only on Spiller's report and the committee failed to review the confidential sources, phone logs/recording, or Plaintiff's witness. (Doc. 1, p. 9).

Plaintiff asserts Fourteenth Amendment and Eighth Amendment claims based on these

---

[2] Plaintiff attaches the ARB letter remanding the disciplinary action "to interview the requested witness or provide a written reason the offender's requested witness is denied" and to provide Plaintiff with a revised Adjustment Committee Summary. (Doc. 1, p. 12). That letter noted the recommended punishment had been six months C-grade, commissary restriction, and contact visit restriction, and six months segregation. *Id.* The Complaint does not disclose whether Plaintiff in fact received this same punishment as a result of the new Adjustment Committee's report.

3

events. (Doc. 1, p. 10). As relief, he seeks an injunction requiring Wardens Lashbrook and Lawrence to expunge his disciplinary report, as well as monetary damages. (Doc. 1, pp. 10-11).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1: Fourteenth Amendment due process claim against Brookman, Hart, Walker, and Schoenbedk for failing to consider Plaintiff's exculpatory evidence or witnesses before finding him guilty of the June 9, 2018 disciplinary infraction.
>
> Count 2: Fourteenth Amendment and Eighth Amendment claims against Spiller for fabricating the June 9, 2018 disciplinary report against Plaintiff.
>
> Count 3: Fourteenth Amendment and/or Eighth Amendment claims against Grievance Officer Pierce and Wardens Lashbrook and Lawrence for allowing Spiller to make the false accusation against Plaintiff for the purpose of subjecting Plaintiff to punishment.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

## Count 1

Plaintiff asserts that Defendants Brookman, Hart, and Walker denied him due process of law at the initial disciplinary hearing by failing to bring Plaintiff back after the continuance to present his witnesses and exculpatory evidence. He similarly claims that Defendants Shoenbedk and Hart, who issued the revised disciplinary summary after the ARB remand, failed to consider his witnesses or evidence.

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

4

Plaintiff correctly invokes *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974), which requires that for a prison disciplinary hearing to satisfy due process requirements, the inmate must be provided: (1) written notice of the charge against the prisoner 24 hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See also Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). However, in order to pursue a due process claim for punishment resulting from a flawed disciplinary proceeding, a prisoner must show that he was deprived of a constitutionally protected liberty interest. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009).

A demotion to C-grade and loss of commissary and contact visit privileges do not amount to a deprivation of a protected liberty interest. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases). As for disciplinary segregation, an inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small").

To determine whether a term of disciplinary segregation imposed an atypical and significant hardship, courts look at both the duration of segregation and the conditions faced by the prisoner in segregation. *Marion*, 559 F.3d at 697-98. If the segregation term is relatively short,

5

no inquiry into specific conditions of confinement is necessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). The *Marion* court observed that six months in segregation "is not such an extreme term and, standing alone, would not trigger due process rights." *Marion*, 559 F.3d at 698; *see also Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (finding conditions of confinement in 6-month segregation term did not amount to an atypical and significant hardship).

Here, it appears that Plaintiff was punished with six months in disciplinary segregation. That duration alone does not rise to the level of a deprivation of a liberty interest, particularly in the context of Plaintiff's life sentence.[4] A six-month period in punitive segregation may constitute a deprivation of liberty if the conditions of that confinement presented an atypical and significant hardship when compared to the conditions prevailing in nondisciplinary segregation, such as investigative or administrative segregation. *Sandin*, 515 U.S. at 484; *Wagner*, 128 F.3d at 1175; *Marion*, 559 F.3d at 697-98. Plaintiff's Complaint discloses nothing about the conditions of his confinement in segregation (nor does it state how long he actually spent in disciplinary segregation). Accordingly, even if the Court accepts Plaintiff's allegation that Defendants failed to afford him the procedural due process protections set forth in *Wolff*, Plaintiff fails to state a due process claim upon which relief may be granted in Count 1.

Count 1 will be dismissed without prejudice. Plaintiff will be given the opportunity to re-plead this claim in an amended complaint if he believes that facts exist to show that the duration of his disciplinary segregation and its conditions imposed an atypical and significant hardship on

---

[4] Plaintiff's sentencing information was found on the website of the Illinois Department of Corrections, Individuals in Custody Search page, http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited May 10, 2022). *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

him.

## Count 2

This claim is against Defendant Spiller, who issued the allegedly false disciplinary ticket that led to Plaintiff's punishment. A disciplinary ticket, even if falsely issued, will not violate the Fourteenth Amendment if the inmate receives procedural due process in the disposition of the ticket. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). Plaintiff maintains that his hearings did not adhere to procedural due process requirements. But as explained above under Count 1, even if proper procedures were not followed, the Complaint must allege facts to indicate that Plaintiff was deprived of a protected liberty interest before his due process claim may proceed. Plaintiff has not met that standard.

Plaintiff invokes the Eighth Amendment as another basis for his claim against Spiller. Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment, and a prison official may be held liable for deliberate indifference to the risk of harm to the inmate from those conditions. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Here, Plaintiff's Complaint does not articulate any violation by Spiller of Plaintiff's right to be free from cruel and unusual punishment. If Plaintiff was subjected to unconstitutional conditions of confinement by Spiller or another Defendant, he may include those allegations in an amended complaint.

To summarize, the claims in Count 2, consisting of the Fourteenth Amendment due process claim and the Eighth Amendment claim against Spiller, will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 3**

Count 3 also fails to state a cognizable claim. While Plaintiff names Grievance Officer Pierce in connection with this claim, he does not include any factual allegations against Pierce in the statement of claim (Doc. 1, pp. 3-9). He merely concludes that Pierce, along with Wardens Lashbrook and Lawrence, "allowed L.T. W. Spiller to ma[k]e the false accusation for the purpose of subjecting plaintiff Judkins to punishment without purpose and the punishment … did occur." (Doc. 1, p. 10).

As to Pierce, the mishandling or failure to respond to grievances does not implicate any constitutional right. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992).

The same applies to Lashbrook and Lawrence, to the extent Plaintiff's grievances may have been directed to them. Furthermore, they cannot be held liable as supervisors for "allowing" Spiller to issue a false disciplinary report. The doctrine of *respondeat superior* (supervisory liability) does not apply in a civil rights action. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). In order to be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). The Complaint does not outline any personal involvement on the part of Lashbrook or Lawrence in Spiller's action of issuing the allegedly false report.

For these reasons, Count 3 will also be dismissed without prejudice.

**DISPOSITION**

**IT IS ORDERED** that the Complaint (Doc. 1), including **COUNTS 1, 2,** and **3**, is

**DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint on or before **June 13, 2022**. Should Plaintiff fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case will be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall also count as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

It is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should include the case number for this action (No. 21-288-SPM). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

In the amended complaint, Plaintiff shall specify, *by name*,[5] each Defendant alleged to be liable, as well as the actions alleged to have been taken by that Defendant. Plaintiff should state facts to describe what each named Defendant did (or failed to do), that violated his constitutional rights. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1

---

[5] Plaintiff may designate an unknown Defendant as John or Jane Doe but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

(7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint. If the First Amended Complaint fails to survive review under § 1915A, this may also count as a "strike."

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 11, 2022**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**
