IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHAN JUDKINS, #B00481,     ) <br>     ) <br>         Plaintiff,     ) <br> vs.     ) <br>     ) <br> W. SPILLER, C/O WALKER,     ) <br> SGT. HART, LT. BROOKMAN,     ) <br> LT. SCHOENBEDK, KELLY PIERCE,     ) <br> J. LASHBROOK, and     ) <br> F. LAWRENCE,     ) <br>     ) <br>         Defendants.     ) | Case No. 21-288-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter is before the Court for a merits review of the First Amended Complaint (Doc. 20), filed after Plaintiff Jonathan Judkins' original Complaint, submitted on March 8, 2021 (Docs. 1, 1-1), was dismissed without prejudice for failure to state a claim upon which relief may be granted. (Doc. 17). Under 28 U.S.C. § 1915A, the Court must screen prisoner Complaints to filter out nonmeritorious claims and dismiss any portion that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant. 28 U.S.C. § 1915A(a) and (b). The Court liberally construes the factual allegations of a *pro se* Complaint. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Plaintiff's claims arose during his incarceration at Menard Correctional Center ("Menard") in 2018-2019. He is currently incarcerated at Hill Correctional Center ("Hill"). Plaintiff asserts that due process procedures were not followed in disciplinary proceedings against him and that he was falsely accused of a conduct violation in retaliation for filing a grievance. (Doc. 20). Plaintiff seeks declaratory and injunctive relief as well as monetary damages. (Doc. 20, p. 10).

1

## THE FIRST AMENDED COMPLAINT

Plaintiff makes the following allegations in his amended pleading (Doc. 20): On May 11, 2018, Defendant Lt. Spiller placed Plaintiff under investigative status. The investigative report did not include sufficient information for Plaintiff to prepare a defense. (Doc. 20, p. 3). Plaintiff filed a grievance on May 14, 2018 (Grievance No. 214-5-18)[1] against Spiller over this unfair treatment. *Id.*

An unnamed officer placed Plaintiff in a segregation cell with a solid steel door where the temperatures ranged from 88 to 92 degrees from May 11 – May 14, 2018. He had no fan or window and the cell temperature felt like it was in the 100s. Plaintiff was without toothpaste, toothbrush, soap, towel, washcloth, or deodorant for those four days, and did not have his eyeglasses, making it hard for him to read or write. (Doc. 20, p. 3). Plaintiff asserts being held in those conditions violated his due process and Eighth Amendment rights because he was being punished before there was any hearing to determine his guilt of the disciplinary infraction. Plaintiff lays blame on Spiller for causing him to be housed in that investigative cell in extreme heat and states he "had a minor heart attack about two months after being behind the steel door." (Doc. 20, p. 7).

On June 9, 2018, Plaintiff was served with Spiller's disciplinary report charging him with Security Threat Group ("STG") activity. Plaintiff signed it and wrote on the form that he requested Ms. Wilson of Mental Health to serve as his witness. (Doc. 20, p. 4). Two days later Plaintiff sent a statement to the Adjustment Committee explaining Ms. Wilson could testify that in April 2018, he told her he planned to renounce affiliation with STGs, but she asked Plaintiff to wait until she could look into the matter to ensure his safety. Plaintiff also asked for review of the phone records of two inmates who had also received disciplinary reports related to the matter, which would show

---

[1] Plaintiff does not include a copy of the May 14, 2018 grievance with his First Amended Complaint.

the time, date, and place of their phone calls that gave rise to the charges and show those inmates were in another part of the building where Plaintiff was never present. (Doc. 20, p. 4).

Plaintiff further asserts that Spiller wrote the disciplinary report on Plaintiff, which he maintains is false, in retaliation for Plaintiff's May 14, 2018 grievance against Spiller. (Doc. 20, p. 9).

On June 11, 2018, Plaintiff sent a grievance directly to the Administrative Review Board ("ARB") asking them to stop the retaliation against him that occurred after he wrote the May 14, 2018 grievance. (Doc. 20, pp. 3, 13-17). The ARB returned that grievance because Plaintiff had not provided his original grievance or the institutional response. (Doc. 20, p. 12).

On June 10 or 11, 2018, Plaintiff filed a grievance with Defendant Lashbrook, alleging that Spiller had retaliated against him for filing the May 14, 2018 grievance. (Doc. 20, pp. 3, 19, 27-28).[2] Plaintiff did not claim in that grievance that the Adjustment Committee had wrongfully punished him in advance of the due process hearing, because no hearing had yet been held. Rather, he complained that Spiller had "wrongfully engineered [his] punishment by fabricating serious charge against [Plaintiff] knowing that the falsehood would lead to being found guilty" because Plaintiff was unable to prepare a defense. (Doc. 20, pp. 3-4).

On June 19, 2018, Plaintiff was taken to the Adjustment Committee, consisting of Defendants Brookman and Hart, to address the disciplinary charge. (Doc. 20, pp. 4-5). Plaintiff informed them of his written statement requesting Ms. Wilson as a witness and asking them to play the telephone recordings and talk to officers staffing E-house to confirm that 8-gallery (where Plaintiff was housed) never went to yard with the inmates in the gallery on the other side of the

---

[2] The first page of this grievance, dated June 10, 2018, is found at page 28 of the First Amended Complaint (Doc. 20). It appears that page 27 of Doc. 20 is the second page of the grievance, and page 19 of Doc. 20 is the third page of the grievance, but the Court cannot be certain given the disorganized presentation of Plaintiff's exhibits.

building. Hart asked Plaintiff if he meant that he was nowhere around the men on the phone, which Plaintiff affirmed. Brookman continued the hearing so he could obtain Plaintiff's statement. (Doc. 20, p. 5). However, Brookman, Hart, and Walker never called Plaintiff back to continue the hearing, call his witness, or listen to the phone records. Plaintiff asserts that the Defendants who heard the disciplinary matter (Walker, Hart, Brookman, and Schoenbedk)[3] relied only on Spiller's summary of events and failed to independently review the telephone logs or recordings or interview any witnesses. The disciplinary hearing and report deprived him of due process because it omitted the times, dates, and place of the alleged gang activities. (Doc. 20, pp. 8-9).

On August 11, 2018, Plaintiff wrote another grievance because the notice of charges against him and the hearing procedure failed to protect his rights. (Doc. 20, p. 4). Plaintiff does not include a copy of that grievance with the First Amended Complaint.

Months later, on April 22, 2019, Plaintiff wrote a grievance (No. 372-4-19) to Warden Lawrence claiming due process and First Amendment violations. (Doc. 20, pp. 5, 21-26). This grievance was prompted by a March 12, 2019 letter from Sarah Johnson of the ARB.[4] The April 22, 2019 grievance focuses on the failure of Grievance Officer Kelly Pierce to properly review the grievance Plaintiff filed over the Adjustment Committee's original flawed handling of his

---

[3] It appears from the original Complaint that Hart and Schoenbedk conducted a hearing on Plaintiff's ticket after the ARB remanded the matter (Doc. 1, pp. 9, 12), but the First Amended Complaint does not include facts on that event, nor does the pleading indicate what Walker's role was in the disciplinary proceedings.
[4] Plaintiff does not include the March 12, 2019 ARB letter with the First Amended Complaint. He did, however, attach it to the original Complaint at Doc. 1, p. 12. The letter referenced Plaintiff's grievance over the June 9, 2018, disciplinary report written by Spiller and the Adjustment Committee hearing finding Plaintiff guilty, and remanded the disciplinary matter back to the Menard Warden for the Adjustment Committee to interview Plaintiff's requested witness or provide a written reason why the witness was denied. The letter also lists the Adjustment Committee's recommended discipline, which included six months in segregation. The First Amended Complaint does not disclose what action was taken by the Adjustment Committee following the ARB remand and does not indicate what punishment Plaintiff ultimately received. Plaintiff's original Complaint stated that the Adjustment Committee issued a new summary of the disciplinary matter on March 28, 2019, following the remand but also did not disclose the outcome of the new hearing or what punishment was imposed, if any. (Doc. 1, p. 9).

disciplinary hearing, because she failed to recognize the deficiencies in the disciplinary report and failed to independently review whether the evidence supported the charge. Plaintiff's requested relief was to obtain an independent review of the grievance. (Doc. 20, p. 21). The First Amended Complaint restates the claim that Pierce's review of the grievance over the disciplinary hearing failed to protect Plaintiff's constitutional rights and failed to correct the misconduct of the Defendants who handled the disciplinary matter, and asserts that the grievance process is a sham. (Doc. 20, pp. 5-6, 9).

Finally, Plaintiff asserts that Defendants Lashbrook and Lawrence (wardens) failed to stop the actions of the other Defendants that violated Plaintiff's constitutional rights. (Doc. 20, p. 10).

Plaintiff seeks declaratory relief, compensatory and punitive damages, as well as an injunction ordering Pierce to have his disciplinary report expunged from the prison's master files and record. (Doc. 20, pp. 10-11).

## DISCUSSION

Based on the allegations in the First Amended Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Fourteenth Amendment due process claim against Brookman, Hart, Walker, and Schoenbedk for failing to consider Plaintiff's exculpatory evidence or witnesses before finding him guilty of the June 9, 2018 disciplinary infraction.

Count 2: Eighth Amendment claim against Spiller for placing Plaintiff under investigative status in May 2018, causing him to be housed in a hot segregation cell behind a steel door for four days.

Count 3: Fourteenth Amendment due process claim against Spiller for fabricating the June 9, 2018 disciplinary report against Plaintiff.

Count 4: First Amendment claim against Spiller for issuing the fabricated June 9, 2018 disciplinary report against Plaintiff in retaliation after Plaintiff filed the May 14, 2018 grievance against Spiller for putting him under investigation and taking him out of general population.

   Count 5:   Fourteenth Amendment and/or Eighth Amendment claims against Grievance Officer Pierce for failing to investigate Plaintiff's grievance over the June 19, 2019 disciplinary hearing including whether the evidence supported his guilt, and against Wardens Lashbrook and Lawrence for allowing Brookman, Hart, Walker, and Schoenbedk to find Plaintiff guilty of the STG charge without considering his evidence or witness.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[5]

### Count 1

The Court dismissed Count 1 as set forth in the original Complaint without prejudice because, while the factual allegations supported a claim that Plaintiff's disciplinary proceedings failed to comply with procedural due process requirements when he was not allowed to present a witness or have exculpatory evidence considered (*see Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974)), Plaintiff failed to show that he was subjected to disciplinary segregation of a sufficient duration and under conditions that amounted to an "atypical and significant hardship." (Doc. 17, pp. 4-7); *see Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Based on the original Complaint and attached exhibit, it appeared that Plaintiff was punished with six months in disciplinary segregation after the flawed hearing. The Court concluded that a duration of six months' segregation in the context of Plaintiff's life sentence did not rise to the level of a constitutional deprivation of a liberty interest, unless the conditions of Plaintiff's segregation confinement imposed unusual hardship on him when

---

[5] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

compared to the conditions found in investigative or administrative segregation. (Doc. 17, p. 6). Plaintiff was allowed to re-plead Count 1 to present any facts showing that the amount of time he spent in disciplinary segregation and the conditions there imposed an atypical and significant hardship on him. (Doc. 17, pp. 6, 9).

The First Amended Complaint fails to shed any more light on Plaintiff's disciplinary segregation experience. To the contrary, the amended pleading presents even fewer facts on this matter than Plaintiff included in the original Complaint. Plaintiff never says whether he actually served the six months in segregation that Brookman and Hart recommended after the June 19, 2018 hearing, and he fails to disclose what happened after his disciplinary case was remanded by the ARB in March 2019. Not only is the Court left in the dark regarding how much segregation time Plaintiff served, if any; the First Amended Complaint is devoid of any factual allegations describing the conditions of confinement for any disciplinary segregation Plaintiff may have served. The First Amended Complaint utterly fails to present factual allegations stating a due process claim upon which relief may be granted against Brookman, Hart, Walker, and Shoenbedk. Accordingly, Count 1 will again be dismissed.

Plaintiff has now had two opportunities to plead this claim. Upon dismissing the original Complaint, the Court clearly explained what facts were missing and what legal standards apply when evaluating the merits of a due process claim arising from a disciplinary proceeding. (Doc. 17, pp. 4-7). Plaintiff failed to include any facts in the First Amended Complaint to establish how much disciplinary segregation time he served as a result of Brookman, Hart, Walker, and Shoenbedk's actions or whether the segregation conditions imposed any unusual hardship on him. The Court therefore concludes that no facts exist to suggest that Plaintiff's disciplinary segregation amounted to an atypical and significant hardship, and it would be futile to allow Plaintiff yet

7

another opportunity to re-plead Count 1. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (leave to amend need not be granted if it is clear that any amendment would be futile). For this reason, the dismissal of Count 1 will be with prejudice.

### Count 2

The First Amended Complaint presents new allegations in support of Plaintiff's Eighth Amendment claim, describing part of his confinement in investigative/administrative segregation in May 2018, after Defendant Spiller placed him under investigation. (Doc 20, pp. 3, 7). Plaintiff spent four days housed in a cell behind a solid steel door with no fan or window, subjecting him to extreme heat. He also lacked basic toiletries and his eyeglasses for those four days. The pleading indicates that Plaintiff spent approximately 30 days in investigative segregation; he does not mention the cell conditions during the approximately 26 other days in that period.

As noted in the Court's initial merits review (Doc. 17, p. 7), the deprivation of an inmate's basic human needs (food, medical care, sanitation, or physical safety) may violate the Eighth Amendment, and a prison official may be held liable for deliberate indifference to the risk of harm to the inmate from those conditions. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). The brief time when Plaintiff was without soap, toothpaste, other toiletries, and his eyeglasses amounts to a short inconvenience and does not represent an excessive risk to his health that violated his Eighth Amendment rights. *See Farmer*, 511 U.S. at 834. The four days of extreme heat were doubtless uncomfortable, but again, the Court is not convinced that this short period posed an objectively serious threat to Plaintiff's physical safety that implicates the Eighth Amendment. Exposure to extreme temperatures without adequate ventilation may violate the Constitution, but

whether it does will depend on the severity and duration of the excessive heat. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997); *see also White v. Monohan*, 326 F. App'x 385, 387 (7th Cir. 2009) (detainee stated a claim where poor ventilation exposed him to extreme heat and cold over a 5-year period); *Dent v. Dennison*, No. 3:17-cv-01356-MAB, 2021 WL 1145736, at *8 (S.D. Ill. Mar. 25, 2021). Here, Plaintiff states that he endured only four days of extreme heat while in investigative segregation, and he does not describe any health effects other than discomfort resulting from those conditions during that time. He does claim to have suffered a "mild heart attack" after the time he spent in the hot cell, but that event is not plausibly connected to Plaintiff's brief exposure to heat approximately two months earlier. (Doc. 20, p. 7). These facts do not satisfy the objective component of a claim for unconstitutional conditions of confinement.

Neither does the First Amended Complaint meet the subjective element of an Eighth Amendment claim. While Defendant Spiller's investigation is what caused Plaintiff to be housed in administrative segregation, there is no indication that Spiller was responsible for or even aware of the conditions of Plaintiff's cell. Spiller, who Plaintiff describes as a Lieutenant responsible for intelligence matters, sent one of his investigative officers to Plaintiff's cell to put him under investigative status. (Doc. 20, p. 3). Plaintiff then states that an "officer," whom he does not identify, placed him behind the steel door in the cell with 88-92 degree temperatures. This narrative demonstrates that Spiller himself was not even present when Plaintiff was moved to the hot cell. Further, Plaintiff does not claim that he complained about the cell conditions to Spiller or to any other officer in the segregation area. In order to state a claim that Spiller was deliberately indifferent to any danger Plaintiff may have faced from his cell conditions, Spiller first had to be aware of those conditions and the risk, and then must have failed to take any action to mitigate the danger to Plaintiff's health. *Farmer*, 511 U.S. at 842. The First Amended Complaint fails to allege

any such facts.

For these reasons, the Eighth Amendment claim against Spiller in Count 2 will be dismissed. As with Count 1, this is Plaintiff's second attempt to set forth facts supporting this particular claim, after the Court explained the applicable legal standards. (Doc. 17, p. 7). The Court concludes that offering yet another opportunity to amend this claim would not produce additional relevant facts and would therefore be futile. Accordingly, the dismissal of Count 2 shall be with prejudice.

### Count 3

This Fourteenth Amendment due process claim against Spiller for fabricating the June 9, 2018 disciplinary report against Plaintiff for gang activity was addressed as part of Count 2 in the merits review of Plaintiff's original Complaint. (Doc. 17, p. 7). The Court dismissed this claim without prejudice for the same reasons that Count 1 was dismissed. A false disciplinary ticket does not violate the Fourteenth Amendment unless it results in the deprivation of a protected liberty interest.

The First Amended Complaint does not set forth any new facts to support this claim against Spiller for issuing an allegedly false disciplinary ticket. As explained in the discussion of Count 1 above, the amended pleading does not state a Fourteenth Amendment claim upon which relief may be granted. The same is true for the claim against Spiller in Count 3. This claim will again be dismissed, for the reasons explained in Count 1, and as with that claim, the dismissal will be with prejudice.

### Count 4

This claim is based on new allegations against Spiller in the First Amended Complaint, asserting that Spiller issued the false disciplinary ticket in retaliation against Plaintiff, after

Plaintiff filed the May 14, 2018 grievance against Spiller for placing him in administrative segregation. (Doc. 20, pp. 3, 9). Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, the chronology of events is: On May 11, 2018, Spiller had Plaintiff placed under investigative status related to purported gang activity and Plaintiff was moved to investigative segregation. On May 14, 2018, Plaintiff filed a grievance against Spiller for "unfair treatment because [Plaintiff] felt like [he] should be treated like inmate [sic] in general population." (Doc. 20, p. 3). Plaintiff did not include a copy of that grievance with his pleadings, but his description indicates his complaint focused on his removal from general population while he was under investigation. On June 9, 2018, Plaintiff was served with Spiller's disciplinary report charging him with STG activity – which Plaintiff contends was false and concocted by Spiller in retaliation for the May 14 grievance. (Doc. 20, pp. 3-4).

While the above sequence of events shows that Plaintiff's protected act of filing the May 14, 2018 grievance preceded the alleged retaliatory action of Spiller issuing the June 9, 2018 disciplinary report, the overall circumstances do not support Plaintiff's claim that Spiller issued the report in order to retaliate against Plaintiff. Plaintiff explains that the reason he was moved to segregation was because Spiller was investigating him for gang activity. Because of that investigation, it is no surprise that a disciplinary report would be forthcoming if the investigating officer believed prohibited activity had occurred. By Plaintiff's own account, he had been involved

11

with a STG and had not yet officially renounced that affiliation. In that context, while it is conceivable that Spiller issued the report purely out of retaliation, knowing it to be false, Plaintiff's retaliation claim based on these facts does not cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Instead, Plaintiff's factual recitation in support of his retaliation claim "do[es] not permit the court to infer more than the mere possibility of misconduct" and does not plausibly show that he is entitled to relief. *Iqbal*, 556 U.S. at 679 (citing FED. R. CIV. P. 8(a)(2)).

For these reasons, the retaliation claim against Spiller in Count 4 will be dismissed without prejudice. In light of the discussion above and based on the facts elaborated in the First Amended Complaint, the Court is skeptical whether Plaintiff can state a viable retaliation claim in an amended pleading. However, out of an abundance of caution, and because Plaintiff articulated this claim for the first time in the First Amended Complaint, Plaintiff will be allowed to submit another amended complaint to re-plead *Count 4 only*, in accordance with the instructions below. *See Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (collecting cases).

**Count 5**

This claim against Pierce, Lashbrook and Lawrence was designated as Count 3 in the Court's merits review Order on the original Complaint. (Doc. 17, pp. 8-9). It was dismissed because Plaintiff did not include any factual allegations against Pierce, and stated his bare conclusion that Pierce, Lashbrook, and Lawrence, "allowed L.T. W. Spiller to ma[k]e the false accusation for the purpose of subjecting plaintiff Judkins to punishment without purpose and the punishment … did occur." (Doc. 1, p. 10). The First Amended Complaint includes more allegations regarding Pierce, but most of these are conclusory in nature. He claims that Pierce failed to properly review or investigate his grievance over the June 19, 2018 disciplinary hearing,

thus failing to correct the misconduct, and asserts that the grievance process is a sham. (Doc. 20, pp. 5-6, 9, 21-26).

As the Court explained in the original merits Order, a prison official's mishandling of prisoner grievances does not implicate any constitutional right and does not state a claim upon which relief may be granted. (Doc. 17, p. 8). "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Grievance procedures are not constitutionally required, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992). Furthermore, a prison official like Pierce in this case, who merely reviews a grievance but was not personally involved in the alleged misconduct that gave rise to the grievance, cannot be held liable for the underlying misconduct. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). As such, even if Pierce's review of Plaintiff's grievance was improperly done, she did not violate the Constitution and Plaintiff cannot maintain a § 1983 claim against her.

The First Amended Complaint similarly fails to state a cognizable claim against Lashbrook or Lawrence. Plaintiff's only assertion against them is that each "fail[ed] to stop the actions of the officers described[,] contrary to the Warden's duty to provide fair institute proper policies and procedure to ensure Plaintiff's Constitution rights is safeguarded [sic]." (Doc. 20, p. 10).

The Court previously dismissed the claims against Lashbrook and Lawrence because they cannot be held liable as supervisors for "allowing" Spiller to issue a false disciplinary report, as Plaintiff alleged in the original Complaint. (Doc. 1, p. 10; Doc. 17, p. 8). The First Amended Complaint similarly seeks to impose liability on the wardens because of their positions as supervisors of the Menard officers who allegedly violated Plaintiff's rights. Supervisory liability

13

is not a permissible ground to maintain a civil rights claim under § 1983. *Sanville*, 266 F.3d at 740. In order to be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Id.* (quoting *Chavez*, 251 F.3d at 651). According to Plaintiff, neither Lashbrook or Lawrence authored the allegedly false disciplinary report or conducted the hearings that he claims did not afford him due process – so they were not personally involved in the events that Plaintiff claims violated his rights. Even if Lashbrook and/or Lawrence later reviewed the matter in the context of Plaintiff's grievances, such review does not amount to personal responsibility for any misconduct committed by others. For these reasons, Plaintiff again fails to state a claim upon which relief may be granted against Lashbrook or Lawrence.

Count 5 against Pierce, Lashbrook, and Lawrence will be dismissed. Again, the Court concludes that affording Plaintiff a third opportunity to plead this claim would be futile, as new facts to support a viable claim are not likely to exist. The dismissal of Count 5 will therefore be with prejudice.

### DISPOSITION

**IT IS ORDERED** that **COUNTS 1, 2, 3, and 5** of the First Amended Complaint are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 4** against Spiller alleging retaliation is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, if Plaintiff wishes to proceed with the retaliation claim in Count 4, he shall file his Second Amended Complaint on or before **December 7, 2022**. **Because Counts 1, 2, 3, and 5 have been dismissed with prejudice, Plaintiff shall not include those claims in the Second Amended Complaint. The Second Amended Complaint must be limited ONLY to facts and allegations supporting the retaliation claim in Count 4**. Should Plaintiff fail to file a Second Amended Complaint within the allotted time or consistent with the instructions

set forth in this Order, the entire case will be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall also count as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

It is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District. He should label the form, "Second Amended Complaint," and he should include the case number for this action (No. 21-288-SPM). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

In the amended complaint, Plaintiff should attempt to include the facts of his retaliation claim in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions. An amended complaint generally supersedes and replaces the previous complaints, rendering them void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the previous Complaints. Thus, the Second Amended Complaint must contain all the relevant allegations in support of Plaintiff's retaliation claim and must stand on its own, without reference to any other pleading. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the Second Amended Complaint. Plaintiff should take care to file only exhibits that relate to the retaliation claim (such as the grievances at issue); irrelevant exhibits will not be considered.

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the Second Amended Complaint. If the Second Amended Complaint fails to survive review under § 1915A, this may also count as a "strike."

In the alternative, Plaintiff may choose to voluntarily dismiss this action and thereby avoid

the imposition of a "strike." If Plaintiff decides to voluntarily dismiss the case, he shall file a written notice of voluntary dismissal with the Clerk of Court on or before the **December 7, 2022** deadline stated above. If the action is voluntarily dismissed, the Court will not count this case as one of Plaintiff's three "strikes."

Finally, Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  November 7, 2022**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**
